UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TRAVELERS INDEMNITY CO., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 4:04CV01365 ERW |
| vs. ) | |
| ) | |
| S.M. WILSON & CO. and BELL ELECTRICAL ) | |
| CONTRACTORS, INC. ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court upon Defendant S.M. Wilson & Company's Motion for Summary Judgment Against Bell Electrical Contractors, Inc. [doc. #68].

**I. BACKGROUND FACTS**

On May 5, 2001, Defendant S.M. Wilson and Company ("Wilson") entered into a contract with Ultimate Electronics, Inc. ("Ultimate") to provide general contractor services for the interior "finish out" of a new electronics store being opened in Fenton, Missouri. On June 5, 2001, Wilson entered into a subcontract with Defendant Bell Electrical Contractors, Inc. ("Bell"), pursuant to which Bell would perform certain electrical work at the store ("the Subcontract"). Thereafter, in accordance with its obligations under the Subcontract, Bell installed an electrical circuit breaker cabinet manufactured by Siemens Energy and Automation, Inc. ("the Cabinet") at the store.[1] Contained within

---

[1] The plans and specifications provided by Ultimate specified that the electrical cabinet to be installed should be one of four possibilities; the Siemens Cabinet was one of those four possibilities.

1

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

the Cabinet was a certain lug assembly[2] which connected the neutral conductor wire[3] to the neutral bus bar.[4] On June 30, 2002, shortly after the work was completed and the store opened to the public for business, a meltdown occurred in the Cabinet where the lug assembly and neutral conductor wire were connected to the neutral bus bar with screws. This resulted in destruction of the Cabinet, as well as damage to other property, including pieces of consumer electronic equipment and components and other electrical equipment, systems, and wiring in the building.

Plaintiff Travelers Indemnity Company ("Travelers"), as the subrogee of Ultimate,[5] brought claims for products liability and negligence against Defendants Wilson, Bell, and Siemens, as well as a breach of contract claim against Wilson.[6] Among other claims, Wilson also brought cross-claims against Bell for contribution and indemnification. Wilson now moves for summary judgment with respect to its cross-claim, and Bell opposes the Motion. In their Joint Stipulation of Facts, Wilson and Bell agree that Wilson notified Bell of the Travelers lawsuit on November 10, 2004. At that time, Wilson tendered its defense to Bell and requested that it provide a defense. Bell did not assume the

---

[2]A lug is a metal fitting to which electrical wires are soldered or connected.

[3]A neutral conductor is a wire that conveys electricity with an equal potential difference between it and the other output conductors of a 3- or 4- wire system.

[4]A neutral bus is a terminal block with many small holes where the white neutral wire can be connected and tightened into place with a screw. A bus bar is a conductor or an assembly of conductors for collecting electric currents and distributing them to outgoing feeders.

[5]Prior to the incident, Travelers had entered into a policy of insurance with Ultimate whereby it undertook to indemnify Ultimate in the event of a covered loss. In accordance with the policy agreement, Travelers paid Ultimate for that portion of Ultimate's loss which was covered by the insurance policy. In return, Ultimate subrogated Travelers to all of the rights, claims, and interest which Ultimate may have against anyone liable for the loss.

[6]By means of summary judgment and settlement, all of Travelers's claims have now been dismissed. Thus, the only remaining claim is Wilson's cross-claim against Bell for indemnification.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

defense of Wilson. Wilson has incurred $31,448.70 in attorneys' fees, expenses, and costs in defending itself against the claims made by Travelers.

**II.     SUMMARY JUDGMENT STANDARD**

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Citrate*, 477 U.S. 317, 322 (1986). The United States Supreme Court has noted that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (quoting Fed. R. Civ. P. 1). "By its terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one such that "a reasonable jury could return a verdict for the nonmoving party." *Id*. Further, if the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once

3

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 249. When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002).

## III. DISCUSSION

The parties agree that the following provision of the Subcontract governs their dispute:

> **SECTION 6** The Subcontractor further specifically obligates himself to the Contractor in the following respects, to-wit: (a) To indemnify and defend the Contractor against and save him harmless from any and all claims, suits, liability, expense or damage for any alleged or actual infringement or violation of any patent or patent right arising in connection with this Subcontract, and anything done thereafter; (b) To indemnify and defend the Contractor against and save him harmless from any and all claims, suits, or liability for injuries to property, injuries to persons including death, and from any other claims, suits or liability on account of any act or omission of the Subcontractor, or any of his officers, agents, employees or servants; . . . (f) The subcontractor warrants and guarantees the work and materials covered by his subcontract and agrees to make good, at his own expense, any defect in materials or workmanship which may occur.
>
> The Subcontractor shall indemnify and defend the Contractor and the Owner against and save them harmless from any and all loss, damage, costs, expenses and attorney's fees suffered or incurred on account of any breach of the aforesaid obligations and covenants and any other provision or covenant of this Subcontract.

According to Wilson, this contract provision obligated Bell to defend it in this matter, and it is entitled to recover the attorneys' fees, expenses, and costs it incurred as a result of Bell's breach of its obligation to defend. Bell contends that it did not owe Wilson a defense in this case because there was no act or omission by Bell which subjected Wilson to liability.

Under Missouri law, if its terms are clear and unambiguous, courts enforce a contract

4

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

according to the plain meaning of its words. *Contract Freighters, Inc. v. J.B. Hunt Transp.*, 245 F.3d 660, 663 (8th Cir. 2001). The plain, unequivocal language of a contract must be enforced as written, and the intent of the parties to an unambiguous contract is found by giving the contract language its natural, ordinary, and common sense meaning. *Cheval v. St. John's Mercy Med. Ctr.*, 958 S.W.2d 36, 39 (Mo. Ct. App. 1997). It is well-settled that, though they may be contained in a single contractual provision, a duty to defend is independent of a duty to indemnify. *See Burns & McDonnell Eng'g Co., Inc. v. Torson Const. Co., Inc.*, 834 S.W.2d 755, 758 (Mo. Ct. App. 1992) (duty to defend is independent of duty to indemnify), *citing INA Ins. Co. of N. Am. v. Valley Forge Ins. Co.*, 722 P.2d 975, 982 (Ariz. Ct. App. 1986) ("duty to defend arises at the earliest stages of litigation and generally exists regardless of whether the insured is ultimately found liable"; "duty to indemnify depends on whether the indemnitee engaged in actual, active wrongdoing") and 42 C.J.S. Indemnity § 4 ("Indemnitor's duty to defend a lawsuit against its indemnitee is totally independent from its obligation to indemnify in the event that a judgment is rendered."). *See also Ferreira v. Beacon Skanska Constr.*, 296 F.Supp.2d 28, 33 (D. Mass. 2003), *and cases cited therein* (duty to defend is independent of underlying obligation to indemnify). Missouri courts will enforce a contractual obligation to defend when the allegations in the complaint fall within the scope of the contractual language.[7] In Missouri, "[f]ees and costs are recoverable as damages for breach of an obligation to

---

[7]*See, e.g., Cremer v. Hollymatic Corp.*, 12 S.W.3d 363, 367 (Mo. Ct. App. 2000) (applying Michigan law; permitting suit to recover attorney fees incurred in defending action where contract provided that indemnitor would "defend the Owner"). *Cheval v. St. John's Mercy Med. Ctr.*, 958 S.W.2d 36, 37, 39 (Mo. Ct. App. 1997) (physician unsuccessfully requested medical center to defend and indemnify him pursuant to contract for any loss, cost, expense, or obligation incurred in wrongful death action; affirming trial court's order that defendant defend, indemnify, and hold harmless the physician in accordance with terms of the Agreement; finding "the Agreement's indemnification provision clearly and unequivocally encompasses the conduct of Physician that is challenged in the separate wrongful death action"); *Missouri Pac. R. Co. v. Rental Storage & Transit Co.*, 524 S.W.2d 898, 912 (Mo. Ct. App. 1975) (contract provision that

5

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

defend." *Allison v. Barnes Hosp.*, 873 S.W.2d 288, 292 (Mo. Ct. App. 1994).

The language in the contractual provision at issue here is unambiguous. According to the Subcontract, Bell agreed "[t]o indemnify and defend [Wilson] against and save him harmless from any and all claims, suits, or liability for injuries to property . . . on account of any act or omission of the Subcontractor, or any of his officers, agents, employees or servants." This provision contains both a promise by Bell that it will indemnify and a promise by Bell that it will provide a defense for Wilson under certain circumstances.[8] According to its plain language, the Subcontract obligates Bell to defend Wilson against any claim or suit alleging injuries to property on account of any act or omission of Bell. Thus, the Court looks to the Complaint in this case. Travelers brought suit against Wilson, Bell, and Siemens. In Count I, Travelers alleged that "Siemens and/or Wilson and/or Bell designed, manufactured, sold, distributed, assembled and/or installed the Cabinet." Compl. ¶ 28. Count I further alleged that "[m]anufacturing, designing, distributing, assembling, selling and/or installing the Cabinet with a loose neutral wiring connection rendered it defective." Compl. ¶ 30.[9] In Count II,

---

indemnitor "assumes full responsibility for, and shall defend, indemnify and save harmless the [indemnitee] from and against all liability, suits, claim, damages, costs (including attorneys' fees), losses, outlays, and expenses in any manner caused by, arising out of or connected with the failure or refusal of [the indemintor] to comply with, observe or perform any of the provisions of [the contract]"; permitted recovery of attorneys' fees incurred in defense of claim made against indemnitee). *Cf. Allison v. Barnes Hosp.*, 873 S.W.2d 288, 293 (Mo. Ct. App. 1994) (recognizing that obligation to indemnify and agreement to defend contained in parties' contract were conditional; denying relief because indemnitor did not agree to indenmify or defend claims asserted against indemnitee based on indemnitee's sole negligence).

[8]Because Wilson has already successfully defended itself from the claims brought by Travelers, there is no issue with regard to indemnification for any monetary judgment rendered against Wilson. However, the issue of Bell's obligation to defend Wilson remains.

[9]As the Court explained in its September 14 Order, Traveler's theory of liability regarding Wilson with respect to Count I was that Wilson was a seller of the defective Cabinet because it supplied and installed the Cabinet through Bell, its subcontractor.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Travelers alleged that "Siemens and/or Wilson and/or Bell jointly and/or severally owed Ultimate (as the user and consumer of the Cabinet manufactured, designed, sold, distributed, assembled and/or installed by defendants) a duty to do, or cause to be done, each of the matters complained of [in the Complaint] in a non-negligent manner." Compl. ¶ 37. Count II further alleged that "Defendants, jointly or severally, breached this duty when they failed to properly secure the loose neutral wiring connection within the Cabinet . . . [and] when they failed to properly inspect the Cabinet." Compl. ¶ 38-39.[10] In Count III, Travelers alleged that Wilson breached its contract with Travelers when the defective Cabinet was installed.[11]

The claims against Wilson fall within the scope of Bell's duty to defend. The claims arise from an injury to property "on account of any act or omission of the Subcontractor" because the claims stem from Bell's act of installing the defective Cabinet. Because the claims against Wilson are based on an act performed by Bell, Bell had a duty to defend Wilson in this matter. Wilson notified Bell of the lawsuit on November 10, 2004 and subsequently tendered its defense to Bell. Bell was afforded a full opportunity to defend Wilson in this action, but chose not to defend. When Bell refused to defend, it breached its duty under the Subcontract. In accordance with the terms of the Subcontract,[12]

---

[10]As the Court noted in its September 14 Order, Travelers's theories regarding Wilson as to this Count appeared to be that Wilson could be held liable for Bell's alleged negligence in installing the Cabinet or that Wilson itself had been negligent in some manner in inspecting the work done by Bell.

[11]In its September 14 Order, the Court explained that Wilson was alleged to have breached the warranty provision of the contract by installing a Cabinet that was not of good quality and not free of defects.

[12]The parties agreed that "[t]he Subcontractor shall indemnify and defend the Contractor and the Owner against and save them harmless from any and all loss, damage, costs, expenses and attorney's fees suffered or incurred on account of any breach of the aforesaid obligations and covenants and any other provision or covenant of this Subcontract."

7

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

and in accordance with applicable law,[13] Wilson is entitled to recover its costs, expenses, and fees incurred in defending this action.[14]

Accordingly,

**IT IS HEREBY ORDERED** that Defendant S.M. Wilson & Company's Motion for Summary Judgment Against Bell Electrical Contractors Inc. [doc. #68] is **GRANTED**. Bell shall pay Wilson Thirty-One Thousand and Four Hundred Forty-eight Dollars and Seventy Cents ($31,448.70).[15]

An appropriate Order of Judgment shall accompany this Order.

Dated this 23rd day of November, 2005.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE

---

[13]"Fees and costs are recoverable as damages for breach of an obligation to defend." *Allison*, 873 S.W.2d at 292.

[14]The Court notes that Bell's reliance on *Kansas City Power & Light Co. v. Federal Construction Corporation*, 351 S.W.2d 741 (Mo. 1961), and *Allison v. Barnes Hospital*, 873 S.W.2d 288 (Mo. Ct. App. 1994), is misplaced. Not only are these cases factually distinguishable from the present action, but also the Court's conclusion that Bell was obligated to defend Wilson in this action is not inconsistent with the holdings in *Kansas City Power* and *Allison*.

[15]This figure represents Wilson's attorneys' fees, expenses, and costs incurred in defending itself against claims made by Travelers. Wilson and Bell have stipulated that they are in agreement as to the amount of fees, expenses, and costs incurred by Wilson in this action.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com